# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

RODOLFO C. ANDERSON,

               Plaintiff,

    v.

OFFICER DEBRITZ, *et al.*,

               Defendants.

Case No. CV 10-2507 AHM (JCG)

MEMORANDUM AND ORDER DISMISSING COMPLAINT WITH LEAVE TO FILE AN AMENDED COMPLAINT WITHIN THIRTY DAYS

## I.

## PROCEEDINGS

On May 5, 2010, plaintiff Rodolfo C. Anderson ("Plaintiff"), a California prisoner incarcerated at Kern Valley State Prison and proceeding *pro se*, filed a civil rights complaint ("Complaint") pursuant to 42 U.S.C. § 1983.  (Compl. at 1.)  For the reasons discussed below, the Complaint merits dismissal with leave to amend.

## II.

## ALLEGATIONS OF THE COMPLAINT

Plaintiff's Complaint relates to straightforward events that occurred while Plaintiff was incarcerated at California State Prison, Los Angeles County ("CSP-LAC") in Lancaster, California.  (Compl. at 3.)  The Complaint names four defendants:

1   (1) Correctional Officer Debritz ("Debritz"); (2) Correctional Lieutenant Cox ("Cox");

2   (3) Kylie J. Thompson, a psychiatric therapist ("Thompson"); and (4) Feldman, a

3   clinical social worker ("Feldman") (collectively "Defendants"). (*Id.* at 3-4.) Each

4   defendant is sued in his or her individual capacity alone. (*Id.*)

5       Plaintiff alleges that from "June 2008 to October 21, 2008," he "authored a book

6   titled 'Kellie White' and later re-titled 'A Moth to a Flame.'" (Compl. at 5.) He claims

7   that the "book was a fictional book depicting a female staff member working in a

8   men's prison." (*Id.*) Plaintiff does not elaborate any further on the nature of the book.

9       Plaintiff asserts that Defendant Thompson "was assisting [him] with editing of

10  said book[ and] agreed to keep the book in a safe and secured location until she would

11  return it to [him] upon [his] request, however, . . .[she has] not returned [Plaintiff's]

12  book in almost two years." (Compl. at 8.)

13      Plaintiff contends that the prison security staff "must have felt that the book was

14  describing actual events" at CSP-LAC. (Compl. at 5.) Plaintiff conspicuously makes

15  no mention of what may have led prison security to harbor such a belief.

16      On or about October 21, 2008, Plaintiff was placed in administrative

17  segregation. (Compl. at 8.) While Plaintiff was in administrative segregation, he

18  states that Defendant Feldman "came to see [him] with a message from [Defendant

19  Thompson], telling [him] among others, that she was alright. At that time[, Plaintiff]

20  proceed[ed] to give the only copy of the second part of [his] book to defendant

21  Feldman with the assurance that she will give the second part of the book to defendant

22  Thompson[ and] . . . return[ it] to [him] later upon request." (*Id.* at 9.)

23      On or about January 9, 2009, Plaintiff asserts that Defendant Debritz confiscated

24  his book and informed Plaintiff of an "on going investigation into overfamiliarity with

25  staff," which is also the reason Plaintiff was placed in administrative segregation.

26  (Compl. at 5, 8.) Plaintiff claims Defendant Debritz failed to provide Plaintiff with a

27  "confiscation receipt." (*Id.*)

28      Thereafter, Defendant Cox interviewed Plaintiff regarding the investigation,
    "was in possession of [Plaintiff's] book," and "promised to return said book on

1   completion of the investigation if [Plaintiff] were to 'help him with the investigation.'"

2   (Compl. at 8.)  Plaintiff alleges that Defendant Cox stated that if Plaintiff did not assist

3   him with the investigation, "he would see to it that '[Plaintiff] regret it.'"  (*Id.*)

4         Based upon the above facts, Plaintiff effectively advances two claims.  First,

5   Plaintiff asserts a due process violation of the Fourteenth Amendment for impounding

6   his book without a "confiscation receipt" and without returning it.  (Compl. at 5.)

7   Second, Plaintiff asserts a violation of the First Amendment because Defendants

8   Thompson and Feldman "were entrusted to secure" Plaintiff's book, but failed to

9   return it.  (*Id.*)  Plaintiff seeks return of his book, $35,000 in compensatory and

10  punitive damages from each defendant, and various forms of declaratory and injunctive

11  relief.  (*Id.* at 6, 12.)

12  ### III.

13  ### LEGAL STANDARDS

14        The Prison Litigation Reform Act ("PLRA") obligates the Court to review

15  complaints filed by all persons proceeding *in forma pauperis*, and by those, like

16  Plaintiff, who are "incarcerated or detained in any facility [and] accused of, sentenced

17  for, or adjudicated delinquent for, violations of criminal law or the terms or conditions

18  of parole, probation, pretrial release, or diversionary program."  *See* 28 U.S.C. §§

19  1915(e)(2)-(h) and 1915A.  Under these provisions, the Court must *sua sponte* dismiss

20  any prisoner civil rights action and all other *in forma pauperis* complaints, or any

21  portions thereof, which are frivolous or malicious, fail to state a claim, or seek

22  damages from defendants who are immune.  *Id.*; *see also Lopez v. Smith*, 203 F.3d

23  1122, 1126-27 (9th Cir. 2000) (*en banc*).  Dismissal for failure to state a claim "can be

24  based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

25  under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,

26  699 (9th Cir. 1988, *as amended* Feb. 27, 1990 and May 11, 1990).

27        Under Federal Rule of Civil Procedure 8, a complaint must contain "a short and

28  plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ.

P. 8(a).  While Rule 8 does not require "detailed factual allegations," a complaint must

1   provide "more than labels and conclusions, and a formulaic recitation of the elements

2   of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

3   (2007). "Factual allegations must be enough to raise a right to relief above the

4   speculative level." *Id.*  Thus, a complaint must contain "enough facts to state a claim

5   to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when

6   the plaintiff pleads enough factual content to allow a court "to draw the reasonable

7   inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

8   129 S.Ct. 1937, 1949 (2009).

9          To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that: (1) the

10  conduct he complains of was committed by a person acting under color of state law;

11  and (2) that the conduct violated a right secured by the Constitution or laws of the

12  United States. *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1184 (9th Cir.

13  2009, *as amended* Jan. 15, 2009 and Jan. 30, 2009), *cert. granted in part*, 130 S.Ct.

14  1501 (2010) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

15                                             **IV.**

16                                    **DISCUSSION**

17        A.    <u>Plaintiff Fails to State a Due Process Claim in Violation of the Fourteenth</u>

18              <u>Amendment.</u>

19        The Due Process Clause protects prisoners from being deprived of property

20  without due process of law and prisoners have a protected interest in their personal

21  property. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Hansen v. May*, 502 F.2d

22  728, 730 (9th Cir. 1974). It is well established, however, that where prison officials,

23  negligently or intentionally, deprive an inmate of his personal property in a random

24  and unauthorized manner, that deprivation does not violate the Fourteenth

25  Amendment, *if* the State has provided an adequate post-deprivation remedy. *Hudson v.*

26  *Palmer*, 468 U.S. 517, 536 (1984); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir.

27  1985). Moreover, the state post-deprivation remedy may be adequate even though

28  it does not provide relief identical to that available under §1983. *Hudson*, 468 U.S. at

531. As the Ninth Circuit explained, the State of California provides such a remedy.

1    *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994).

2          Here, Plaintiff contends that Defendant Debritz confiscated his book and failed

3    to provide him with a "confiscation receipt" while he was being investigated for

4    "overfamiliarity with staff."  (Compl. at 8.)  Plaintiff also contends that the book has

5    not been returned to him.  To the extent Plaintiff's property was illegally seized,

6    Plaintiff's recourse is, however, through the State mechanism, and the State

7    mechanism alone, *not via* a federal Section 1983 action.

8          B.    <u>Plaintiff Fails to State a Freedom of Speech Claim in Violation of the</u>

9                <u>First Amendment.</u>

10         Plaintiff next advances a claim for violation of his First Amendment right. The

11   claim is untenable.  Of course, prisoners "do not forfeit all constitutional protections by

12   reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520,

13   545 (1979).  "Inmates clearly retain protections afforded by the First Amendment[.]"

14   *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (internal citation omitted).

15   However, "lawful incarceration brings about the necessary withdrawal or limitation of

16   many privileges and rights, a retraction justified by the considerations underlying our

17   penal system." *Id.* (internal quotation marks, citation and brackets omitted).  Thus,

18   "when a prison regulation impinges on inmates' constitutional rights, the regulation is

19   valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*,

20   482 U.S. 78, 89 (1987). *Turner* sets forth four factors to be balanced in determining

21   whether a prison regulation is reasonably related to legitimate penological interests:

22                (1) Whether there is a valid, rational connection between the prison

23                regulation and the legitimate governmental interest put forward to

24                justify it;

25                (2) Whether there are alternative means of exercising the right that

26                remain open to prison inmates;

27                (3) Whether accommodation of the asserted constitutional right will

28                impact guards and other inmates, and on the allocation of prison

                  resources generally; and

5

1    (4) Whether there is an absence of ready alternatives versus the

2    existence of obvious, easy alternatives.

3    *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008) (internal quotation marks,

4    alterations and citation omitted); *accord Turner*, 482 U.S. at 89-90.

5    Plaintiff fails to allege facts in claim two demonstrating that the confiscation of his book was

6    unjustified.  To the contrary, Plaintiff alleges the prison staff were undertaking an investigation for

7    "overfamiliarity with staff."  (Compl. at 8.)  On its surface alone, this allegation appears to reflect a

8    legitimate penological interest that renders Plaintiff's claim facially unplausible.  *Iqbal*, 129

9    S.Ct. at 1949; *see also Bretches v. Kirkland*, 335 Fed.Appx. 675, 677 (9th Cir. 2009)

10   ("decision barring [prisoner plaintiff] from publishing his book [must] further an

11   important or substantial interest unrelated to the suppression of [plaintiff's]

12   expression").

13   To the extent Plaintiff wishes to pursue this claim, Plaintiff must set forth all relevant facts –

14   not labels or conclusions – that describe why Defendants' actions were unjustified, including a

15   description of the content of his book.  *See also Prison Legal News v. Cook*, 238 F.3d 1145, 1149

16   (9th Cir. 2001) (finding non-profit newsletter addressing prison-related issues is

17   "protected speech, not commercial speech or speech whose content is objectionable on

18   security or other grounds[]").

19   C.    Plaintiff Fails to State a Retaliation Claim in Violation of the First

20          Amendment.

21   While Plaintiff did not articulate a First Amendment retaliation claim, he

22   factually raised the specter of such a claim, which the Court believes would be prudent

23   to address now because such a claim may not be colorable.  Plaintiff alleged that he

24   was placed in administrative segregation after the confiscation of his book and that

25   Defendant Cox threatened that "he would see to it" that Plaintiff would "regret it" if he

26   did not help Defendant Cox with the investigation.  (Compl. at 8.)

27   "Within the prison context, a viable claim of First Amendment retaliation entails

28   five basic elements:  (1) An assertion that a state actor took some adverse action

     against an inmate (2) because of (3) that prisoner's protected conduct, and that such

1  action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the

2  action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*,

3  408 F.3d 559, 567-68 (9th Cir. 2004, *as amended* Apr. 25, 2005) (footnote omitted).

4        Thus, the injury asserted in a prison retaliation case is the retaliatory conduct's

5  chilling effect on the plaintiff's First Amendment rights and the injury must be legally

6  unwarranted, that is, there must be the lack of a legitimate correctional goal.  *See Hines*

7  *v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997), *cert. denied*, 524 U.S. 936 (1998) (the

8  injury asserted in a retaliation claim is the chilling effect on the prisoner's First

9  Amendment rights); *see also Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000, *as*

10  *amended* May 22, 2000) (to state an actionable retaliation claim, plaintiff must allege

11  that his First Amendment rights have been chilled or infringed).

12        Here, it does not appear that Plaintiff can sufficiently allege an injury where his

13  First Amendment rights were chilled, aside from perhaps a *de minimis* inconvenience

14  or, at best, a speculative allegation to that effect.  *Gaut v. Sunn*, 810 F.2d 923, 925 (9th

15  Cir. 1987) (*per curiam*) (finding that a mere threat of constitutional harm is insufficient

16  to state a 1983 claim).  Also, as previously stated, Plaintiff not only fails to show the

17  absence of a legitimate correctional goal, but affirmatively provides one on behalf of

18  Defendants, namely, the investigation of "overfamiliarity with staff."  *Mauro v. Arpaio*,

19  188 F.3d 1054, 1059 (9th Cir. 1999) (*en banc*), *cert. denied*, 529 U.S. 1018 (2000)

20  ("[P]rotecting the safety of guards in general is a legitimate interest, and that reducing

21  sexual harassment in particular likewise is legitimate.").  It thus appears, albeit without

22  prejudging any matter, that Plaintiff would be unable to state a cognizable First

23  Amendment retaliation claim here.

## V.

## LEAVE TO AMEND

26        The Court must construe "pro se pleadings ... liberally ..., particularly where

27  civil rights claims are involved."  *Balistreri*, 901 F.2d at 699.  But "a liberal

28  interpretation of a civil rights complaint may not supply essential elements of the claim

that were not initially pled."  *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266,

268 (9th Cir. 1982).  Accordingly, *pro se* litigants must be given leave to amend unless it is absolutely clear that the deficiencies in a complaint cannot be cured.  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (*per curiam*).  As the Court is unable to determine whether amendment to the Complaint would be futile, leave to amend is granted in an abundance of caution.

By August 2, 2010, Plaintiff may submit a First Amended Complaint to cure the deficiencies discussed above.  The Clerk of Court will mail Plaintiff a court-approved form to use for filing the First Amended Complaint.  If Plaintiff fails to use the court-approved form, the Court may strike the First Amended Complaint and dismiss this action without further notice.

If Plaintiff chooses to file a First Amended Complaint, it must comply with Federal Rule of Civil Procedure 8, and contain short, plain statements explaining:  (1) the constitutional right Plaintiff believes was violated; (2) the name of the defendant who violated that right; (3) exactly what that defendant did or failed to do; (4) how the action or inaction of that defendant is connected to the violation of Plaintiff's constitutional right; and (5) what specific injury Plaintiff suffered because of that defendant's conduct.  *See* 42 U.S.C. § 1983; Fed. R. Civ. P. 8; *see also Humphries*, 554 F.3d at 1184; *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976).  If Plaintiff fails to affirmatively link the conduct of the defendant with the specific injury suffered by Plaintiff, the allegation against that defendant will be dismissed for failure to state a claim.  Conclusory allegations that a defendant has violated a constitutional right are not acceptable and will be dismissed.

Plaintiff must clearly designate on the face of the document that it is the "First Amended Complaint," and it must be retyped or rewritten in its entirety on the court-approved form.  The First Amended Complaint may not incorporate any part of the original Complaint by reference.

Any amended complaint supercedes the original Complaint.  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir.), *cert. denied*, 506 U.S. 915 (1992).  After amendment, the Court will treat the original Complaint as nonexistent.  *Id.*  Any claim that was

raised in the original Complaint is waived if it is not raised again in the First Amended Complaint.  *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

## VI.

### ORDER

1.      Plaintiff is given leave to amend and is **GRANTED** up to and including **August 2, 2010**, to file a First Amended Complaint curing the deficiencies discussed above.  Plaintiff is **NOTIFIED** that the First Amended Complaint may not add new claims or new defendants that were not involved in the conduct, transactions, or occurrences set forth in the original Complaint.  Fed. R. Civ. P. 15(c).  The First Amended Complaint shall be retyped or rewritten so that it is complete in itself without reference to the original Complaint, and shall be submitted on the court-approved form.  After amendment, the Court will treat the original Complaint as nonexistent.

2.      If Plaintiff fails to file a First Amended Complaint by August 2, 2010 and/or such First Amended Complaint fails to comply with the requirements set forth in this Memorandum and Order, the Court may recommend that this action, or portions thereof, be dismissed with prejudice.

3.      The Clerk of Court is **DIRECTED** to send Plaintiff a prisoner civil rights complaint form so that he may amend the Complaint.

IT IS SO ORDERED.


DATED: July 2, 2010

_____
                    Hon. Jay C. Gandhi
                 United States Magistrate Judge